IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT WILDERS, )
        Plaintiff, )
)
vs. ) Civil Action No. 17-1115
)
QUIKRETE COMPANIES, INC., )
        Defendant. )

## OPINION

Presently pending before the Court is a motion for summary judgment (ECF No. 19), with brief in support (ECF No. 20), filed by defendant Quikrete Companies, Inc. Plaintiff Robert Wilders has filed a brief in opposition (ECF No. 25). Defendant has filed a reply brief (ECF No. 33) and Plaintiff has filed a sur-reply brief (ECF No. 34). For the reasons that follow, the Court will deny Defendant's motion.

**Factual History**[1]

Plaintiff claims to suffer from arthritis in his knees, which he alleges causes him to limp on occasion and makes it difficult for him to walk long distances. Plaintiff estimates that he probably could not walk more than a mile. No doctor has ever given Plaintiff any restrictions regarding his ability to walk, even for long distances.

Plaintiff was hired by Quikrete as a truck driver on April 6, 2015. Quikrete requires its drivers to perform the following job-related tasks: ensure trucks are safe for the road; perform

---

[1] The facts outlined herein are gleaned from Defendant's Concise Statement of Material Facts (ECF No. 21), Plaintiff's response and statement of additional facts (ECF Nos. 26, 27), and Defendant's response (ECF No. 31), as well as the various exhibits attached thereto.

minor maintenance; change straps when necessary; replace lights when necessary; secure loads; drive product safely; unstrap loads; roll up straps; and return empty pallets. After receiving his offer of employment, but before beginning work, Plaintiff was required to undergo a physical exam, which took place on March 25, 2015. Subsequently, Plaintiff was declared fit for duty with no physical limitations noted. However, Steven Wilder, a Quikrete plant manager (hereinafter referred to as the Plant Manager), had observed Plaintiff limping and walking on the balls of his feet and, according to Plaintiff, was aware of the arthritis in Plaintiff's knees.

During the course of Plaintiff's employment with Quikrete, his physical capabilities never changed. Plaintiff was always able to perform the requirements of his job as a driver, including standing, walking, climbing, balancing, and lifting up to 100 pounds. In addition to his work with Quikrete, Plaintiff is a volunteer firefighter. Plaintiff is physically capable of performing all of the physically-demanding duties associated with being a volunteer firefighter and has never been told that he cannot perform the functions of that role.

In December of 2015, Quikrete began its seasonal lack-of-work layoffs. Layoffs are scheduled based on seniority. Plaintiff was familiar with the process because in his last 27 jobs he was laid off for lack of work numerous times. Seven employees were laid off before him, and Plaintiff was scheduled to be laid off in January of 2016.

On January 26, 2016, Plaintiff reported to Quikrete that he had fallen on ice while on the job and hit his left shoulder on his trailer. After reporting the January 26, 2016 injury, Plaintiff communicated to the Plant Manager that, while he felt he needed to go to the emergency room, he wanted to take out another load in the truck first. Taking another load out would have required Plaintiff to strap and unstrap a new load, and drive a manual transmission truck for approximately two hours with an alleged shoulder injury. Plaintiff admitted that this was an unsafe decision. The

2

day after the fall, at Quikrete's request, Plaintiff was examined by a doctor and was released to return to work with no restrictions. Plaintiff's honesty regarding the circumstances surrounding the alleged fall was called into question by the Plaint Manager. As a result, the Plant Manager prepared a written warning for Plaintiff due to the safety hazards associated with Plaintiff's conduct, specifically Plaintiff's failure to wear a non-slip outer sole in icy conditions. However, the warning was never given to Plaintiff, because he was placed on seasonal lay off the day after the incident. His last day worked was January 27, 2016.

Sometime thereafter, the Plant Manager met with Plaintiff to inform Plaintiff that he was not going to be recalled from his lay off, despite his eligibility to be rehired. The facts and timing of this meeting are disputed, but Plaintiff alleges that the Plant Manager told him he was being let go because Quikrete "did not want the responsibility of [Plaintiff's] knees" (ECF No. 26, ¶¶ 34-37). By contrast, Quikrete contends that the decision not to recall Plaintiff was based on the circumstances surrounding the January 2016 incident.

On July 24, 2016, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission (PHRC) and cross-filed with the Equal Employment Opportunity Commission (EECO). The EEOC issued a Notice of Right to Sue on June 28, 2017.

**Procedural History**

Plaintiff initiated this action by filing a complaint on August 24, 2017, raising claims pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* and the Pennsylvania Human Rights Act, 43 Pa.C.S. §§ 955(a), *et seq*. (ECF No. 1). On November 14, 2017, Defendant answered the amended complaint (ECF No. 5). Following discovery, on September 7, 2018, Defendant moved for summary judgment (ECF No. 19). The motion has been

fully briefed and is ripe for disposition. This Court has jurisdiction under 28 U.S.C. §§ 1331 and under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that:

> [a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). For the purposes of summary judgment, "[a] material fact is '[a] fact[ ] that might affect the outcome of the suit under the governing law.'" Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." (Id.) (quoting Anderson, 477 U.S. at 248-49).

In resolving a motion for summary judgment, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts

in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

**Discussion**

Plaintiff alleges a claim of disability discrimination pursuant to the ADA and the PHRA (ECF No. 1, ¶¶ 10-18).[2] Specifically, Plaintiff argues that Quikrete's decision not to rehire him was discriminatory because Quikrete regarded him as disabled due to the arthritis in his knees (ECF No. 25, pg. 4-8).

At the outset, it bears noting that the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793-94 (1973), is applicable to cases brought under the ADA.

> Under the McDonnell Douglas burden shifting paradigm, plaintiff has the initial burden to make a *prima facie* showing of discrimination, but if s/he does so, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action. If the defendant meets this burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted. However, the plaintiff must then be afforded an opportunity to show that the employer's stated reason for the employment action, such as plaintiff's rejection or separation, was pretextual. In order to prove the employer's explanation is pretextual, the plaintiff must cast [ ] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication ... or ... allow[ ] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. A plaintiff who has made out a *prima facie* case may defeat a motion for summary judgment by either (i) discrediting the employer's proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

Wishkin v. Potter, 476 F.3d 180, 184–85 (3d Cir. 2007) (citations and quotation marks omitted).

---

[2] The Third Circuit has held that claims arising under the ADA and the PHRA are interpreted coextensively, see Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir.1999); thus, there is no need to distinguish between the two causes of action.

5

In order to present a *prima facie* case of discrimination under the ADA, Plaintiff must demonstrate that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Techs., 134 F.3d 576, 580 (3d Cir. 1998). At this juncture, Quikrete concedes that Plaintiff has satisfied the second prong as he was qualified to perform the job of truck driver (ECF No. 20, n. 4). However, Quikrete argues that Plaintiff is unable to prove that he was perceived as being disabled by his employer or that he was fired as a result of that perceived disability (Id. at pg. 6-10). In so doing, Quikrete emphasizes that Plaintiff cannot prove that his physical impairment "substantially" limits any major life activities (Id. at 6, citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).

A person is considered "disabled" under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or [is] **regarded as having** such an impairment." 42 U.S.C. § 12102(1) (emphasis added). Relevant to this proceeding, the ADA defines "major life activity" to include "walking." 42 U.S.C. § 12102(2)(A).

In Kelly, the Third Circuit held that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action" Kelly, 94 F.3d at 109. However, in 2008, Congress amended the ADA to add language clarifying the definition of "being regarded as having such an impairment." See the ADA Amendments Act of 2008, Pub. L. No. 110– 325, 122 Stat. 3553. The amended language reads as follows.

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to

6

an action prohibited under this chapter because of an actual or perceived physical or mental impairment **whether or not the impairment limits or is perceived to limit a major life activity**.

42 U.S.C. § 12102(3) (emphasis added).[3]

The 2008 amendment superseded the holding in Kelly, and renders meritless Defendant's argument that Plaintiff's ability to walk must be substantially limited in order to support a *prima facie* case of discrimination. See Jackomas v. City of Pittsburgh, 342 F. Supp. 3d 632, 648 (W.D. Pa. 2018); see also Rubano v. Farrell Area Sch. Dist., 991 F.Supp.2d 678, 692–93 (W.D. Pa. 2014).

Here, the evidence supports Plaintiff's contention that the Plant Manager was aware of Plaintiff's physical impairment: the Plant Manager testified that he had observed Plaintiff limping and walking on the balls of his feet, (ECF No. 22-3, pg. 14), and Plaintiff alleges the Plant Manager had twice questioned Plaintiff about his knees in the months before his termination (ECF No. 28-1, at 98-99). Further, at Plaintiff's termination meeting the Plant Manager allegedly admitted that Quikrete did not want the continued liability of Plaintiff's knees (ECF No. 25, pg. 9-10). Plaintiff specifically asked whether the decision was due to his limp and "never got an answer" (ECF No. 28-1, at 92-93). Mindful of the 2008 amendments and viewing this evidence in the light most favorable to Plaintiff, this Court finds that he has satisfied his burden of demonstrating that his

---

[3] The Code of Federal Regulations reiterates that

> an individual is "regarded as having such an impairment" if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, **whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity.** Prohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment.

29 C.F.R. § 1630.2(l)(1) (emphasis added).

employer regarded him as impaired such that he qualifies as disabled under the ADA.

With respect to the third prong of the applicable test, the Third Circuit has described an adverse employment action "as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jones v. SE. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015) (citations omitted). The parties agree that Defendant's failure to recall Plaintiff constitutes an adverse employment action. A reasonable jury could find that the adverse employment action was based on Plaintiff's perceived disability. Accordingly, the Court agrees that Plaintiff has made a *prima facie* case of discrimination.

The burden now shifts to the Defendant to articulate some legitimate, non-discriminatory reason for Plaintiff's termination. Wishkin 476 F.3d at 184–85. In this regard, Quikrete argues that Plaintiff was discharged "based on … concerns regarding Plaintiff's judgment on January 26, 2017, when Plaintiff went to operate an 80,000-pound truck with an emergency-worthy injury" (ECF No. 20, pg. 7-8).

"To defeat summary judgment when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. To do so, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" (Id. at 765).

Plaintiff contends that Defendant's justification is pretextual, based in large part on the aforementioned comments made by the Plant Manager which suggest a preoccupation with the

condition of Plaintiff's knees prior to his layoff, and a pointed concern about his knees as a consideration for rehire. In his deposition, the Manager denied mentioning Plaintiff's knees at any point during his termination meeting, and denied telling Plaintiff that he was regarded as a liability (ECF No. 28-1, at 26). The Plant Manager stated that he

> … did not give [Plaintiff] a specific reason of why he was not being recalled; however, I did tell him one of the reasons why -- one of the reasons -- one of the reasons that was not a cause for him not to be recalled, because he asked me if he was -- if it was because of his knee, and I told him that it was not.
>
> And I remember that because it was a very unusual question, and I thought [Plaintiff] was trying to get me to say it was because of his knee, and I was also surprised by it because his knee had never been an issue.

(ECF No. 22-3, pg. 13-14).

Nonetheless, the dispositive consideration is whether Plaintiff has "provide[d] evidence that supports a logical inference of causation between the alleged disability and the adverse employment action." Rubano, 991 F.Supp.2d at 700. When construed in Plaintiff's favor, the Plant Manager's comments are sufficient to create an inference that the decision to terminate him was an attempt to insulate Quikrete from further liability because Plaintiff's impairment put him at a higher risk for injury. Thus, there is enough contradictory evidence that could lead a reasonable factfinder to conclude that Quikrete's stated reason for failing to recall Plaintiff was pretextual.

**Conclusion**

As there is a genuine dispute of material fact with respect to Plaintiff's claims of discrimination, Quikerte's motion is denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT WILDERS, )
         Plaintiff, )
)
vs. )   Civil Action No. 17-1115
)
QUIKRETE COMPANIES, INC., )
         Defendant. )

## ORDER

AND NOW, this 12th day of March, 2019, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED that the Defendants' Motion for Summary Judgment (ECF No. 19) be and the same hereby is DENIED.

                                                    /s/ Robert C. Mitchell
                                                    ROBERT C. MITCHELL
                                                    United States Magistrate Judge

Cc: record counsel via CM-ECF